2007 ME 67

**TRI–TOWN MARINE, INC.**

v.

**J.C. MILLIKEN AGENCY, INC.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Dec. 20, 2006.
Decided: May 29, 2007.

Brett D. Baber, Esq., Brett D. Baber, PA, Bangor, for appellant.

Frederick J. Badger Jr., Esq., John B. Lucy, Esq., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.*

CLIFFORD, J.

[¶ 1] Tri–Town Marine, Inc. appeals from a summary judgment in favor of J.C. Milliken Agency, Inc., an insurance agency, entered in the Superior Court (Washington County, *Hunter, J.*) on Tri–Town's complaint for negligent misrepresentation, breach of contract, and negligence in connection with its purchase, through J.C. Milliken, of a builder's risk insurance policy issued by Commercial Union Insurance Company. Tri–Town contends that it established prima facie evidence as to each

---

* Justice Howard H. Dana participated in the initial conference but retired before this opinion was certified.

of its claims, that genuine issues of material fact remain for trial, and that the court therefore erred in entering a summary judgment. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] The undisputed facts are that Tri–Town is a boat builder and seller located in Harrington. J.C. Milliken is an independent insurance agency in Machias that sells the insurance products of ten to twelve different insurance companies.

[¶ 3] Jonathan Hoffman had purchased a boat hull from a third party, and, in 1996, hired Tri–Town to outfit the hull and construct a thirty-foot boat for him. After reaching the initial agreement with Hoffman, Tri–Town contacted Dolores Hanson, an agent at J.C. Milliken, to purchase insurance on the Hoffman boat during construction. Following discussions with Hanson, Tri–Town purchased, through J.C. Milliken, an additional endorsement on its existing builder's risk insurance with Commercial Union, as recommended by Hanson.[1]

[¶ 4] When it delivered the completed boat to Hoffman in 1999, Tri–Town was aware that the boat had structural problems causing it to list to starboard. In 2000, Hoffman filed a civil action against Tri–Town in the Superior Court, asserting claims for breach of contract, breach of warranty, and negligence, and seeking rescission of the contract and a refund of the purchase price. In 2002, following a jury-waived trial, the court (*Jabar, J.*) found that the boat was not safe at certain speeds because it listed to starboard during operation, and that Tri–Town had breached an implied warranty because the

boat was "not fit for the ordinary purpose for which such boats are used." *See* 11 M.R.S. § 2–314(2)(c) (2006). The court ordered rescission of the contract between Tri–Town and Hoffman, and required Tri–Town to return the purchase price of $118,000 to Hoffman in exchange for Hoffman's return of the vessel to Tri–Town.

[¶ 5] After Hoffman filed its complaint against Tri–Town, Tri–Town notified Commercial Union of the suit and sought coverage pursuant to the builder's risk endorsement purchased through J.C. Milliken. Commercial Union denied coverage for the Hoffman action pursuant to an exclusion in the policy. Tri–Town and Commercial Union litigated the issue in a declaratory judgment action filed by Tri–Town in the United States District Court for the District of Maine in 2002. Prior to entry of any judgment in that action, however, Tri–Town and Commercial Union came to an agreement and settled the matter.

[¶ 6] On July 2, 2003, Tri–Town filed a three-count complaint in the Superior Court in the instant case against J.C. Milliken for (1) misrepresenting the scope of the builder's risk endorsement, (2) breach of contract in failing to arrange for the coverage sought by Tri–Town as promised by J.C. Milliken, and (3) negligence in failing to provide accurate advice and a policy that fulfilled Tri–Town's requests for coverage. Pursuant to J.C. Milliken's subsequent motion, the court entered a summary judgment in favor of J.C. Milliken as to all three counts. Tri–Town appealed.

---

1. Although in its complaint, Tri–Town alleges that it intended to purchase "full and complete coverage for all liability claims that could be asserted against [it] for the construction of the Hoffman boat," Tri–Town never-

theless admitted in its summary judgment papers that the builder's risk policy it purchased was not a liability policy, but instead provided "coverage against risk of loss while [the] boat ... [was] under construction."

## II. DISCUSSION

■ [¶ 7] We review the grant of a motion for summary judgment de novo, and examine the evidence in the light most favorable to the nonprevailing party, in this case, Tri–Town, "to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law." *Champagne v. Mid–Me. Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844. In doing so, we must accept as true all uncontroverted facts in the record. *Id.* As the plaintiff and party opposing summary judgment, it is Tri–Town's burden to establish a prima facie case for every element of each of its causes of action. *See id.* ¶ 9, 711 A.2d at 845.

[¶ 8] One of the six bases on which the court granted summary judgment was its legal conclusion that, because Tri–Town's claims were based on J.C. Milliken's failure to procure better insurance coverage, Tri–Town was required to offer prima facie evidence that such better coverage was otherwise available, but failed to offer such evidence. Tri–Town concedes that the scope of coverage it sought for the Hoffman boat is not offered by or available from any other insurer, but nevertheless contends that proof of the availability of better alternative coverage does not constitute an element of misrepresentation, breach of contract, or negligence, either in general, or specifically with regard to insurance agencies, and therefore summary judgment was improperly entered against it.

[¶ 9] In entering a summary judgment, the Superior Court relied, at least in part, on *Bangor–Brewer Bowling Lanes, Inc. v. Commercial Union–York Insurance Co.*, in which the Superior Court held:

> In order to make out a case [against an insurance agent for failure to procure adequate insurance coverage] under either [contract or tort] theory, the plaintiff would need to present some evidence to allow a finding that [such] coverage would have been available if [the insurance agent] had fulfilled its alleged duty of care to the plaintiff or if [the insurance agent] had not allegedly breached a contract to procure adequate insurance for the plaintiff.

2001 WL 1719237, *5, 2001 Me.Super. LEXIS 174, **14–15 (July 3, 2001). The Superior Court likened the case to one for legal malpractice, which requires, in order to prove causation, evidence that better legal representation would have resulted in a more favorable outcome. *Id.; see Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶¶ 13–14, 742 A.2d 933, 940. Further, as the Superior Court noted, the vast majority of other jurisdictions require such proof in failure to procure cases. *See Bangor–Brewer Bowling Lanes*, 2001 WL 1719238, *5–6, 2001 Me.Super. LEXIS 174, **15–16; *see also Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 244 (Colo.1987) (holding that "[w]here ... a claim for relief is predicated on the negligent failure of an insurance broker or agent to procure a particular type of insurance coverage sought by the plaintiff," the plaintiff must prove "as an aspect of causation and damages, that such insurance was generally available in the insurance industry when the broker or agent obtained insurance coverage for the plaintiff"); *Am. Motorists Ins. Co. v. Salvatore*, 102 A.D.2d 342, 476 N.Y.S.2d 897, 900 (N.Y.App.Div.1984) (holding that liability for failure to procure insurance may be based on contract or tort principles, but that "in order to support a recovery, it must be demonstrated that coverage could have been procured prior to the occurrence of the insured event"); *State v. Warren Star Theater*, 84 Ohio App.3d 435, 616 N.E.2d 1192, 1196 (1992) (determining that the plaintiff failed to establish negli-

gent failure to procure insurance because "[t]here was no evidence presented that, had the [requested] coverage been in place, [the] plaintiffs would have been protected by said policy"); *Johnson & Higgins of Ala. Inc. v. Blomfield,* 907 P.2d 1371, 1374 (Alaska 1995) (noting that the majority rule requires the plaintiff to prove that "coverage was commercially available for the loss sustained").

[¶ 10] Although there is abundant authority that proof of better alternative coverage in failure to procure insurance cases is required, we need not decide whether the availability of better coverage is, as a matter of law, an essential element of proof in this type of action because, in this case, Tri–Town failed to allege sufficient facts necessary to establish causation. For causation to be established in such circumstances, the plaintiff must allege that, but for the defendant's acts, the resulting outcome for the plaintiff would have been both different, and more favorable. *See St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.,* 2002 ME 127, ¶ 30, 818 A.2d 995, 1004 (discussing the plaintiff insured's production of evidence establishing that it was the defendant insurer's representations that caused the insured to choose to do business with that particular insurer); *see also* 17–A M.R.S. § 33 (2006) (providing that, in criminal cases, "causation may be found where the result would not have occurred but for the conduct of the defendant"). This concept is also explicitly recognized in cases involving legal malpractice, in which proof that better representation would have brought about a more favorable outcome is required. *See, e.g., Niehoff v. Shankman & Assocs. Legal Ctr., P.A.,* 2000 ME 214, ¶ 9, 763 A.2d 121, 124; *Co-*

*rey,* 1999 ME 196, ¶¶ 13–14, 742 A.2d at 940.

[¶ 11] Tri–Town does not dispute that causation is a necessary element of proof as to all three of Tri–Town's causes of action. *See Rand v. Bath Iron Works Corp.,* 2003 ME 122, ¶ 13, 832 A.2d 771, 774 (detailing the elements of negligent misrepresentation); *Mastriano v. Blyer,* 2001 ME 134, ¶ 11, 779 A.2d 951, 954 (stating the necessary elements of a negligence claim); *Stanton v. Univ. of Me. Sys.,* 2001 ME 96, ¶ 13, 773 A.2d 1045, 1050–51 (discussing the proof necessary to establish the existence and breach of a contract). Tri–Town's pleadings do not allege, nor do its summary judgment facts establish, that absent J.C. Milliken's acts, Tri–Town would have acted in a substantially different way, e.g., that it would have charged Hoffman more for building the boat, would have declined to build the boat at all, or would have made some other arrangement in light of the increased risk to Tri–Town of building the Hoffman boat absent the type of insurance coverage it sought through J.C. Milliken. Indeed, Tri–Town never alleged or demonstrated that, had it known the true scope of the policy at the time, it would have acted any differently in procuring the coverage.[2] Absent some such evidence, Tri–Town has failed to establish on a prima facie basis the element of causation common to all its claims against J.C. Milliken, and the court therefore properly granted a summary judgment in J.C. Milliken's favor. Because we conclude that the court properly granted a summary judgment to J.C. Milliken on all counts, we need not consider Tri–Town's remaining contentions of error as to the other independent bases on which the court entered the summary judgment.

**2.** It is also undisputed in the summary judgment record that Tri–Town did not contact J.C. Milliken to procure coverage until *after* it had already reached an agreement with Hoffman.