CHRISTOPHER TOTO,        )
                         )
        Plaintiff,       )
                         )
    v.                   )
                         )
RAELYN KNOWLES,          )
                         )
        Defendant.       )

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

REC'D CUMB CLERKS OFC
MAR 6 '20 AM10:27

Before the Court is Defendant Raelyn Knowle's Motion for Summary Judgment pursuant to M.R. Civ. P. 56(b). For the following reasons, Defendant's Motion is denied.

## I. Summary Judgment Factual Record

On August 6, 2018, Plaintiff filed a one count complaint alleging that he suffered personal injuries as a result of Defendant's negligent operation of her vehicle. (Pl.'s Compl. ¶¶ 20-23.) The following facts establish the record relevant to this Court's order.

On June 6, 2014, Plaintiff was involved in a car accident on Forest Avenue in Portland, Maine. Plaintiff stopped for a minivan in front of him that he believes was stopped to allow a pedestrian to cross the street. (Add. S.M.F. ¶¶ 1-2.) Plaintiff was then rear ended by another vehicle and lost consciousness. (Add. S.M.F. ¶ 3.) The force of the impact drove Plaintiff's vehicle into the vehicle in front of him. (Add. S.M.F. ¶ 4.) Plaintiff complained of a loss of consciousness and extreme pain in the top of his head and was transported by emergency personnel to Maine Medical Center. (Add. S.M.F. ¶ 5.) As a result of the accident, Plaintiff claims he suffered headaches and "visual injuries," that affect his balance, depth perception and ability to read. (Supp.'g S.M.F. ¶ 1.) In

For Plaintiff: Sarah A. Churchill, Esq.

For Defendant: L John Topchik, Esq.

addition to having headaches and issues with balance, Plaintiff was asked the following questions and provided the following answers:

> Q: Then tell me – describe for me your course of treatment after that, like what did you do – the MRI is negative, what did you do then?
>
> A: Well, I had headaches and I had balance issues and vision issues, so I went to my family doctor and he sent me to Dr. Robinson.
>
> Q: All right. Prior to the accident, I take it that you had no problems with vision, correct?
>
> A: Correct.
>
> Q: You had no problems with balance?
>
> A: Correct.
>
> Q: You had no problems with any of the things that you have now that are a result of the accident, is that fair?
>
> A: That's fair.
>
> Q: And let me ask you this. You have made very clear your current limitations relating to your vision, right, you described earlier about you have problems with depth perception, all those things, you have double vision somethings, I'm kind of roughly characterizing it, but you described those things, correct?
>
> A: Yeah, the other thing is like these words, what they become is black lines, you can't really take the letters out. Computers are out of the question, you know. So like I said, I put these on and everything slopes right off.
>
> Q: And what I'm just trying – we have that one category – to put it crudely, you have that one group of symptoms that we discussed that are really vision related, right?
>
> A: They are from the accident, yep.
>
> Q: Right, other than those vision related symptoms, do you have any other physical complaints that you believe are related to the accident?
>
> A: No.
>
> Q: All right. So you didn't injure your back your neck or your shoulder in the accident, is that fair?
>
> A: Fair.

Q: If we go to a jury, the one thing you are going to be telling them is the vision – my problems with the vision and that's it, but that was caused by the accident, is that fair?

A: Correct.

(Supp.'g S.M.F. ¶ 3.) Colin R. Robinson ("Dr. Robinson"), a Neuro Optometrist, ultimately diagnosed Plaintiff with "visual midline shift," which can be caused by a concussion as well as other medical conditions including, *inter alia*, multiple-sclerosis, Parkinson's, autism, and Lyme disease. (Add. S.M.F. ¶ 7; Robinson Dep. 24.) Plaintiff was very clear that his vision and balance issues did not exist prior to the accident. (Add. S.M.F. ¶ 6.) Plaintiff does not allege that the car accidence caused any other injuries aside from the "visual injuries" and associated symptoms. (Supp.'g S.M.F. ¶ 2.)

On December 13, 2019, Defendant filed a Motion in Limine to preclude Dr. Robinson from testifying as an expert witness. Defendant filed the current Motion predicated on the assumption that the Court would grant the pending Motion in Limine, thereby justifying a summary judgment in her favor.

## II. Standard of Review

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

Each parties' statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* When it is the plaintiff opposing summary judgment, the plaintiff must establish a prima face case for every element of each claim. *Tri-Town Marine, Inc. v. J.C. Milliken Agency, Inc.,* 2007 ME 67, ¶ 7, 924 A.2d 1066. The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.,* 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

To survive Defendant's Motion, Plaintiff must establish a prima facie case for each element of the cause of action. *Mastriano v. Blyer,* 2001 ME 134, ¶ 11, 779 A.2d 951. A prima facie case of negligence requires a plaintiff to establish four elements: duty, breach, causation, and damages. *Id.* Defendant does not challenge the evidence establishing the existence of a duty, breach, and damages.[1] Rather, Defendant raises one argument in support of her Motion – that the exclusion of Dr. Robinson's expert testimony justifies a summary judgment because there would be no competent, admissible evidence to support a finding that Plaintiff's "visual injuries" were caused by the car accident, thereby justifying a summary judgment in her favor. (Def.'s Mot. Summ. J. 1.)

---

[1] Although neither party specifically addresses each element of negligence, the factual record evidences that Plaintiff satisfied his prima facie showing demonstrating the existence of a duty, breach, and damages.

Proximate cause is generally a question of fact for the jury. *Merriam v. Wagner,* 2000 ME, ¶ 10, 757 A.2d 778. Proximate cause is "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred."[2] *Id.* ¶ 9. Defendant cites *Merriam v. Wagner* for the proposition that "[a]llowing a jury to infer causation on complex medical facts without the aid of expert testimony on the subject and without some showing that [defendant's] conduct was 'more likely than not' a cause of [plaintiff's] injury, stretches the jury's role beyond its capacity." (*Id.* ¶ 17; Def.'s Mot. Summ. J. 2.) While it is true that expert testimony is almost always required in medical malpractice cases to establish that defendant's conduct was the proximate cause of a plaintiff's injures, *Chasse v. Mazerolle,* 662 A.2d 1180, 1182 (Me. 1993), this is not a medical malpractice case, the facts of this case are distinguishable.

Here, Plaintiff presented sufficient evidence demonstrating that he was injured as a result of Defendant's negligent operation of her vehicle. Plaintiff evidenced that he lost consciousness, suffered from extreme pain on the top of his head, and that he eventually received treatment for a diagnosis of "visual midline shift." (Supp.'g S.M.F. ¶ 1; Add. S.M.F. ¶ 5; Robinson Dep. 24.) Plaintiff further evidenced that his visual injuries and associated symptoms did not exist prior to the accident. (Add. S.M.F. ¶ 6.)

Thus, viewing the evidence in the light most favorable to Plaintiff, it would not be mere "conjecture of speculation" for a jury to infer that the automobile accident was the

---

[2] Put another way: "Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Crowe v. Shaw,* 2000 ME 136, ¶ 10, 755 A.2d 509.

proximate cause of Plaintiff's injuries. Although Plaintiff's case has been affected by this Court's Order precluding Dr. Robinson from testifying as an expert, Dr. Robinson's testimony is not necessary for a jury to find that the accident caused Plaintiff's injuries – headaches, balance issues, vision issues including: depth perception, double vision etc.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 3/6/2020

MaryGay Kennedy, Justice
Maine Superior Court

CHRISTOPHER TOTO, )
)
    Plaintiff, )
)
    v. )
)
RAELYN KNOWLES, )
)
    Defendant. )

**ORDER ON DEFENDANT'S
MOTION IN LIMINE**

REC'D CUMB CLERKS OFC
MAR 6 '20 AM10:27

Before the Court is Defendant Raelyn Knowle's Motion in Limine to exclude the testimony of Plaintiff Christopher Toto's designated expert Colin R. Robinson, O.D. For the following reasons, Defendant's Motion is granted.

## I.   Background

This is a personal injury action arising out of a motor vehicle accident that occurred on June 6, 2014, in Portland. Following the accident, Plaintiff was treated in the emergency department at Maine Medical Center for a concussion. Plaintiff alleges that he experienced "visual injuries," fatigue, headaches, eye pressure and pain, and found himself unable to work. (Def.'s Ex. 1, at 4.) Eventually Plaintiff was referred to Conin R. Robinson ("Dr. Robinson"), an Optometrist specializing in Neuro-Optometric Rehabilitation who diagnosed Plaintiff with "visual midline shift" and treated him accordingly. (Robinson Dep. 24.) Plaintiff designated Dr. Robinson as an expert witness to testify as to the manner and course of treatment, and to opine that the accident was a direct and proximate cause of Plaintiff's visual injuries. (Def.'s Ex. 3.)

On December 13, 2019, Defendant filed a motion in limine to preclude Dr. Robinson from presenting any testimony on the grounds that "visual midline shift" is not

a diagnosis recognized by the medical community, and that Dr. Robinson is not competent to render an opinion as to whether Plaintiff's injuries were caused by the car accident. (Def.'s Mot. Lim. 3-5.)

## II. Discussion

Pursuant to M.R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or determine a fact in issue." M.R. Evid. 702. "A proponent of expert testimony must establish that (1) the testimony is relevant pursuant to M.R. Evid. 401, and (2) it will assist the trier of fact in understanding the evidence or determining a fact in issue." *Searles v. Fleetwood Homes of Pa., Inc.*, 2005 ME 94, ¶ 21, 878 A.2d 509. Before engaging in this two-part inquiry, however, the expert testimony "must also meet a threshold level of reliability." *Id.* ¶ 22 (citations omitted). In *Searles*, the Law Court noted the following factors the court may consider:

> (1) whether any studies tendered in support of the testimony are based on facts similar to those at issue; (2) whether the hypothesis of the testimony has been subject to peer review; (3) whether an expert's conclusion has been tailored to the facts of the case; (4) whether any other experts attest to the reliability of the testimony; (5) the nature of the expert's qualifications; and (6), if a causal relationship is asserted, whether there is a scientific basis for determining that such a relationship exists.

*Id.* ¶ 23 (internal citations omitted, numbers added).

Having given this matter careful consideration, the Court concludes that Dr. Robinson's anticipated expert testimony lacks the necessary foundation under Rule 702's threshold reliability inquiry. Dr. Robinson, by his own admission, acknowledges that he is not competent to offer an opinion as to the cause of Plaintiff's visual injuries. (Robinson Dep. 40, 42.) This admission casts doubt on Dr. Robinson's ability to offer reliable

evidence and assist the trier of fact to decide the issue of causation. That being said, this ruling does not disrupt Dr. Robinson's status as a fact witness who may testify as Plaintiff's treating physician.

## III.    Conclusion

Defendant's Motion in Limine to exclude testimony of Colin R. Robinson is GRANTED to the extent that Dr. Robinson will not be permitted to testify as an expert witness, and is DENIED as to Dr. Robinson's testimony as a fact witness.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___3/6/2020___                     _____
                                          Mary Gay Kennedy, Justice
                                          Maine Superior Court